IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| I & O, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TOWER KAUAI LAGOONS 9B, LLC, *et al.*,<br><br>Defendants. | Case No. 24-cv-00098-DKW-WRP<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND, (2) DISMISSING COUNTS I & II OF THE FIRST AMENDED COMPLAINT WITH PREJUDICE, AND (3) DISMISSING COUNTS III-V WITHOUT PREJUDICE FOR LACK OF SUPPLEMENTAL JURISDICTION** |

In 2019, Plaintiff I&O, LLC (I&O) and Defendant Tower Kauai Lagoons 9B, LLC (9B) signed a series of documents that resulted in I&O purchasing two "resort apartment units" at the "TK Resort Condominium Project" on the Island of Kaua'i, Hawai'i. According to I&O, as part of their agreements, 9B agreed to provide "cooperation, experience, contacts and assistance" in completing certain "post-closing improvements" to the purchased units.

Approximately five years later, in February 2024, I&O filed the instant lawsuit, alleging that 9B had breached the agreements by failing to live up to its end of the bargain with regard to the post-closing improvements. I&O also asserts

claims under federal securities law, alleging that the agreements constitute "investment contracts" that are unregistered and contain "misrepresentations".

9B has moved to dismiss with prejudice I&O's claims under federal law, arguing that the same are barred under either a one-year statute of limitations and/or a three-year statute of repose.   Essentially, 9B argues that these claims are barred because they were brought more than a year or more than three years after the signing of the agreements and/or after I&O knew 9B's representations were allegedly misleading or untrue.   I&O opposes dismissal, arguing that its federal claims are not barred because the sale of the resort apartment units "is not complete", it brought this case within one year of ceasing communications with 9B, 9B has not made a "bona fide offering" of a security to the public, and/or 9B "continue[s] to offer securities for sale."

Upon review of the parties' briefing, the record, and relevant case law, the Court agrees with 9B that I&O's federal securities claims, which are Counts I and II of the First Amended Complaint (FAC), are barred by both the one-year statute of limitations and the three-year statute of repose.   With respect to Count I, which concerns the alleged failure to register the agreements between the parties, the Court agrees with 9B that the latest relevant date is when escrow closed on the "resort apartment units" in 2019—more than three years before the initiation of this lawsuit in February 2024.   With respect to Count II, which concerns alleged

"misrepresentations" in the agreements, the Court agrees with 9B that I&O failed to bring this claim (1) within one year of knowing of the misrepresentations and/or (2) within three years of the execution of the agreements.   Therefore, for the reasons discussed more fully below, the Court GRANTS the motion to dismiss, Dkt. No. 52, and DISMISSES Counts I and II for failure to state a claim.   Further, because the record reveals that amendment of these claims could not cure the identified deficiencies, dismissal is WITH PREJUDICE and without leave to amend.   Finally, because Counts I and II are the only bases for federal jurisdiction over this action and I&O's remaining claims, which are Counts III-V, are premised upon State law, the Court also agrees that Counts III-V should be DISMISSED WITHOUT PREJUDICE for lack of supplemental jurisdiction.

## **BACKGROUND**

On February 29, 2024, Plaintiffs I&O and Ponani Sukumar, as the manager of I&O, (together, Plaintiffs) initiated this lawsuit with the filing of a complaint against Defendants 9B, Tower Kauai Lagoons Mezz, LLC, Tower Kauai Lagoons, LLC, Kauai Lagoons Grand Avenue Partners, LLC, Timbers Hawaii Real Estate LLC (collectively, Defendants), and Doe Defendants 1-50.   Dkt. No. 1.   On July 8,

2024, I&O filed the FAC against the Defendants and Doe Defendants 1-50, alleging the following relevant facts.   Dkt. No. 26.[1]

In July 2018, I&O contacted Defendants about purchasing one or more "resort apartment units" in a 450-acre resort and private residence club on the Island of Kaua'i, Hawai'i (the Resort).   Dkt. No. 26 at ¶¶ 21, 25-26.   On January 17, 2019, I&O and 9B executed and delivered a purchase agreement for Unit 2406 of the Resort in the amount of $3.1 million (the Unit 2406 Purchase Agreement).   *Id*. at ¶¶ 29-30.   In addition to the Unit 2406 Purchase Agreement, I&O and 9B entered into an "Addendum" to the same (the Unit 2406 Addendum), which contained, *inter alia*, 9B's "obligation to assist with and perform" certain "improvements", referred to as "Post-Closing Improvements" in the FAC, including, electrical upgrades, hose bibs, electric vehicle chargers, water filtration, solar, and security systems, an "outside parking space", and "front door and mechanical room relocation" for Unit 2406.   *Id*. at ¶¶ 26, 29.   Escrow closed on Unit 2406 on January 23, 2019.   *Id*. at ¶ 31.

On June 7 and 13, 2019, I&O and 9B executed a purchase agreement for Unit 3202 of the Resort in the amount of $9.18 million (the Unit 3202 Purchase Agreement).   *Id*. at ¶¶ 32-33. On July 13, 2019, I&O and 9B executed and delivered

---

[1] Unlike in the Complaint, Sukumar is described as a party in the FAC, even though he is not identified as a plaintiff in the caption.   *Compare* Dkt. No. 1 at 4, *with* Dkt. No. 26 at ¶ 4.   It thus appears that I&O is intended to be the sole named plaintiff.   Dkt. No. 26 at 2, ¶¶ 3-5.

an amendment to the Unit 3202 Purchase Agreement. *Id.* at ¶ 32. I&O and 9B also entered into an "Addendum" to the same (the Unit 3202 Addendum), which contained, *inter alia*, provisions similar to the ones in the Unit 2406 Addendum with respect to 9B's "obligations to assist with and perform the Post-Closing Improvements…." *Id.* at ¶¶ 32, 35. Escrow on Unit 3202 closed on August 22, 2019. *Id.* at ¶ 34. With respect to these obligations, 9B agreed to "use its best efforts … to cause" certain Post-Closing Improvements "to be properly completed as soon as possible after the close of Escrow." *Id.* at ¶ 48. "The Post-Closing Improvements were important to [] Sukumar and [I&O] would not have purchased the Units on the same terms but for [9B's] agreement to complete these improvements after closing." *Id.* at ¶¶ 27, 30, 33.

Over four years later, this lawsuit was initiated. According to the Complaint, Defendants "refused and/or otherwise failed to perform their contractual obligations," with none of the Post-Closing Improvements having been completed. *Id.* at ¶ 49. In fact, "very little substantive work" has been done. *Id.* at ¶ 50. As a result, I&O has not been able to "fully use and enjoy" Unit 2406 or Unit 3202 as intended. *Id.* at ¶ 52.

During this four-plus-year period, I&O alleges that it engaged in various "efforts for resolution". *Id.* at 23. I&O has "repeatedly requested" "tracking sheets" prepared by Defendants to identify, *inter alia*, the status of the Post-Closing

Improvements. *Id*. at ¶¶ 53, 55. Defendants, however, have provided I&O with "outdated" and "incorrect" sheets that are "useless." *Id*. at ¶¶ 54-55. On March 2 and March 24, 2022, a representative for I&O sent emails to Defendants "requesting that they take action and move forward with the Post-Closing Improvements." *Id*. at ¶¶ 56-57. The latter email stated, *inter alia*, that the Post-Closing Improvements were "stuck in the initial planning phase[,]" Defendants had failed to provide updated tracking sheets, I&O had not been able to use and enjoy Unit 2406 or Unit 3202, "[n]othing has happened" since a call in October 2021, and updated tracking sheets should be provided by April 1, 2022. *Id*. at ¶ 57.

On May 23, 2022, I&O sent a written "Dispute Notice" to Defendants "outlining the chronology of [their] persistent failures." *Id*. at ¶ 58.[2] More specifically, in the "Dispute Notice", I&O notified Defendants of a "dispute" concerning their "failure to timely and properly complete [] obligations under the Purchase Agreements for Units 2406 and 3202 … relating to the Post-Closing Improvements." Dkt. No. 59-2 at 1. Further, I&O stated that "none" of the Post-Closing Improvements had been started, Defendants failed to take action despite multiple requests in March and April 2022, and I&O had been "damaged" by

---

[2]Unlike the March 24, 2022 email or provisions of the Purchase Agreements, no part of the "Dispute Notice" is included in the FAC verbatim. Dkt. No. 26 at ¶ 58. However, because the "Dispute Notice" is referenced in the FAC, and included in the exhibits attached to the briefing on the motion to dismiss, the Court may summarize the same herein without converting the motion to dismiss into a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

the delays in the Post-Closing Improvements. *Id*. On May 27, 2022, Defendants responded to the Dispute Notice. *Id*. at ¶ 59.[3] After further communications, on July 28, 2022, Defendants provided "updated (but still incomplete and inaccurate) tracking sheets", reflecting an updated timeline for completion of the Post-Closing Improvements. *Id*. This led I&O "to believe that Defendants still fully intended and were fully capable of completing the Post-Closing Improvements, although within a longer timeframe tha[n] originally intended." *Id*. at ¶ 60. "However, by Spring 2023 there was still a lack of meaningful progress and it became clear to [I&O] that Defendants did not actually have the expertise and relationships with local contractors and vendors necessary to complete the Post-Closing Improvements." *Id*.

Based on this course of conduct, I&O now asserts five claims against Defendants: (1) failing to register the Unit 2406 Purchase Agreement, the Unit 2406 Addendum, the Unit 3202 Purchase Agreement, and the Unit 3202 Addendum (collectively, the Agreements) as "securities" in violation of 15 U.S.C. Section 77*l*(a)(1) and Haw. Rev. Stat. Section 485A-509(b) (Count I); (2) making misrepresentations in securities offerings in violation of 15 U.S.C. Section 77*l*(a)(2) and Haw. Rev. Stat. Section 485A-509(b) (Count II); (3) misrepresentation in violation of State law (Count III); (4) breach of contract in violation of State law

---

[3]Neither the nature nor the details of the response are alleged in the FAC.

(Count IV); and (5) breach of fiduciary duty in violation of State law (Count V, and, with Counts III and IV, the State law claims). *Id.* at ¶¶ 77-128.

On September 9, 2025, Defendants filed the instant motion to dismiss. Dkt. No. 52. Therein, the Defendants bring a two-pronged attack on I&O's claims. With respect to the federal securities claims, Defendants argue that they should be dismissed with prejudice for failure to state a claim on three grounds. First, Defendants argue that Counts I and II are barred by a one-year statute of limitations. Second, Defendants argue that Counts I and II are barred by a three-year statute of repose. Third, Defendants argue that the Agreements are not "securities" and, thus, are not subject to federal securities law. With respect to the State law claims, as relevant here, Defendants argue that, because the federal securities claims are the only basis for subject matter jurisdiction, this Court should decline to exercise supplemental jurisdiction over the remaining State law claims.[4]

I&O opposes dismissal. Dkt. No. 58. First, I&O argues that the Agreements are "securities" for the purposes of federal securities law. Second, I&O argues that Count I is barred by neither a statute of limitations nor a statute of repose because the sale of the "security" – here, the Agreements – is "not complete", there has been no "bona fide offering" of the security, and/or Defendants "continue

---

[4]Defendants also argue that Counts III and V should be dismissed as to all Defendants for failure to state a claim, and Count IV should be dismissed on the same ground with respect to Defendants other than 9B.

to offer securities for sale." Third, I&O argues that Count II is barred by neither a statute of limitations nor a statute of repose because this action was brought within one year of Defendants "ceasing" communications and because the sale of the "security" is "not complete". On October 10, 2025, Defendants replied. Dkt. No. 59. With briefing complete, this Order now follows.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing

*Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2).  *Id.* at 679.

## DISCUSSION

Because they are the only bases alleged for federal subject matter jurisdiction, Dkt. No. 26 at ¶¶ 19-20, the Court begins its analysis with I&O's federal securities claims—Counts I-II.  Further, for purposes of this Order, the Court *assumes* that the Agreements relating to Units 2406 and 3202 are "securities" for purposes of federal law and, thus, does not otherwise address the parties' dispute over the same.  For the reasons discussed more fully below, however, the Court finds that I&O's federal securities claims are barred by both the one-year statute of limitations and the three-year statute of repose.[5]  The Court begins with the former.

## I.    Statute of Limitations

The Securities Act of 1933 provides that no action under Section 77*l*(a)(1) shall be maintained "unless brought within one year after the violation upon which it is based[,]" and no action under Section 77*l*(a)(2) shall be maintained "unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable

---

[5]For the avoidance of doubt, in the FAC, I&O appears to bring Counts I-II under both federal law and State law—specifically, Haw. Rev. Stat. Section 485A-509(b).  Because neither party contends that the analysis is different, *see generally* Dkt. Nos. 52-1 & 58, the Court's findings herein apply to Counts I-II whether brought under federal or State law.

diligence….."   15 U.S.C. § 77m.   For purposes of Section 77*l*(a)(1), "[t]he statute

begins to run from the date of the defendant's last sales-related activity, *i.e.*, offer,

sale or delivery of the security."   *In re Nat'l Mortg. Equity Corp. Mortg. Pool

Certificates Sec. Litig.*, 636 F. Supp. 1138, 1166 (C.D. Cal. 1986) (citing *Toombs v.

Leone*, 777 F.2d 465, 468 (9th Cir. 1985)).   It is a plaintiff's burden to

"affirmatively plead sufficient facts in his complaint to demonstrate conformity with

the statute of limitations."   *Toombs*, 777 F.2d at 468.

    Here, I&O alleges in the FAC, and argues in its response, that far from being

expired, as Defendants contend, the statute of limitations for Count I has not even

*begun* to run because the "sale" of the Agreements "is not complete[.]"   I&O also

asserts that the "sale" of the Agreements is incomplete, in part, because the

Post-Closing Improvements are unfinished.   I&O's logic with respect to the timing

of its claims -- while having the obvious convenience of prolonging the accrual of

the same for the greatest possible period -- is absurd.

    As mentioned, the statute of limitations inquiry looks to the later of offer, sale,

or delivery; <u>not</u> the full performance of alleged contractual terms, such as the alleged

failure to complete Post-Closing Improvements.   Further, as I&O acknowledges, it

is the "last conduct *constituting the alleged violation*[]" that is relevant.   *See* Dkt.

No. 58 at 10 (emphasis added).   Full performance of contractual terms is entirely

untethered from *the alleged Count I violation* here—Defendants' alleged failure to

*register* the Agreements.   Put simply, in no way can finishing the Post-Closing

Improvements be construed as an offer, sale, or delivery of the Agreements, or

otherwise represent the last conduct constituting the failure to *register* the same.   It,

thus, cannot be the appropriate benchmark.[6]

Instead, when using I&O's preferred measure of the securities—the

Agreements—the FAC does not allege when they were offered.   While this is a

pleading failure on I&O's part, no one contends that an offer could have occurred

except prior to the sale and delivery of the Agreements.   Therefore, the only

relevant question is when were the Agreements sold and/or delivered?   The Court

agrees with Defendants that the latest possible date for both is when escrow closed

on Unit 2406 and Unit 3202 in January and August 2019, respectively.[7]   This

---

[6]The only case cited in support of I&O's far-fetched theory of accrual is *Stone v. Fossil Oil & Gas*, 657 F. Supp. 1449 (D.N.M. 1987).   Dkt. No. 58 at 10-11.   In *Stone*, however, the district court did <u>not</u> find that a claim accrued after the full performance of every contractual term to the satisfaction of the plaintiff, as I&O desires here.   Instead, the actual finding in *Stone* was that it was "not until [the plaintiff] agreed to take *delivery* of unregistered stock that the sale of stock was finally realized."   *Stone*, 657 F. Supp. at 1456.   Here, as noted further below, *see supra* Note 7, even the FAC alleges that delivery of the Agreements occurred far more than a year before the start of this case.

[7]Even this seems generous given I&O's insistence that the Agreements are the relevant security.   For the Agreements, the most logical final event in their sale or delivery was when they were *executed*, which allegedly occurred, respectively, a few days or a few weeks *before* escrow closed on each of the Units.   *See Herber v. Omega Oil Corp.*, 1985 WL 3614, at *15 (N.D. Ill. Nov. 4, 1985) (finding "[t]he last act performed by any of the defendants in any of the transactions which constitutes the sale or delivery of an unregistered security was on October 18, 1982 when [a defendant] executed and delivered to [the plaintiff] a corrected assignment of working interest in [an oil or gas well]."); *see also Kahn v. Kohlberg, Kravitz, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir. 1992 (explaining, in applying Section 77m to a claim brought under the Investment Advisers Act, that "the cause of action would accrue when the agreements were entered into….").   Moreover, this is precisely what the FAC itself alleges.   *See* Dkt. No. 26 at ¶ 29 ("On January 17, 2019, Plaintiff and [9B] *executed and delivered* a Purchase Agreement … for Plaintiff's purchase

lawsuit was initiated in February *2024*.    Therefore, Count 1 is clearly untimely under Section 77m's one-year statute of limitations.

Count II is brought under Section 77*l*(a)(2) and, thus, should have been brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence…."    In the FAC, I&O alleges four untrue statements or omissions, all of which concern Defendants' alleged failure to complete the Post-Closing Improvements.    Dkt. No. 26 at ¶ 74.    I&O alleges, and argues in its response, that Count II is timely because it believed until 2023 that Defendants had accurately represented their ability and intent to perform the Post-Closing Improvements.    *Id*. at ¶ 102; Dkt. No. 58 at 12-13.    I&O asserts that this belief only changed when Defendants "ceased all communications with Plaintiff's counsel…."    Dkt. No. 26 at ¶ 102.

I&O's argument is misplaced.    Initially, as I&O tacitly acknowledges in its response, in choosing its desired triggering event for accrual, it has essentially granted itself an open-ended limitations period.    Specifically, I&O contends that, even if Defendants "start" performing the Post-Closing Improvements, it would still be "impossible" to know whether they would fully perform by, presumably,

---

of Unit 2406 of the Project."); *id*. at ¶ 32 ("The Unit 3202 Purchase Agreement was amended by that certain Amendment to Purchase Agreement *executed and delivered* by Plaintiff and [9B] on July 13, 2019.").

completing the Improvements.   *See* Dkt. No. 58 at 13 n.4.   In other words, if

Defendants never complete performance, in I&O's mind, the statute of limitations

for Count II would never even begin.   This is, of course, and not for the first time,

absurd.

Among other things, just six months after purchasing Unit 2406 in January

2019, I&O negotiated language in the Unit 3202 Addendum concerning

Post-Closing Improvements in order to address I&O's "concerns about the delays in

getting the Post-Closing Improvements for Unit 2406 completed…."   Dkt. No. 26

at ¶ 37.   I&O also "repeatedly requested" updated and complete tracking sheets

because of continuing Post-Closing Improvement concerns, but received only

"incorrect or superseded information" in response.   *Id*. at ¶ 55; *see also id*. at ¶ 54

(alleging that "Defendants' failure to update the tracking sheets evidences that

Defendants do not intend to comply with their obligations to complete the

improvements as agreed and as expected.").   On March 24, 2022, I&O sent an

email to Defendants, stating, *inter alia*, that, although, I&O would not have

purchased the Units without Defendants' "commitment to timely provide" the

Post-Closing Improvements, it had been between 2.5 and 3 years since the purchase

of the Units and "not much has happened" with respect to the Post-Closing

Improvements.   *Id*. at ¶ 57.   I&O followed up the email with a May 2022 "Dispute

Notice", *id*. at ¶ 58 which opened by providing notice of a "dispute" concerning

Defendants' "failure to timely and properly complete its obligations under the [Agreements] relating to the Post-Closing Improvements[,]" Dkt. No. 59-2 at 1. Finally, I&O alleges that "Defendants have not made any significant progress in completing the promised improvements." Dkt. No. 26 at ¶ 62. "In fact…very little substantive work has been completed." *Id*. at ¶ 50.

These alleged facts paint a clear picture. I&O had "expressed concerns" about "delays" in the Post-Closing Improvements as early as July 2019, these concerns were thereafter "repeatedly" raised with Defendants to no satisfaction and despite I&O continuing to flag Defendants' failures, and, ultimately, little "substantive work" ever took place. At the very least, then, I&O knew of Defendants' failures and alleged misrepresentations of timely performance long before February 2023—the one-year point prior to the initiation of this action. *See F.D.I.C. v. Countrywide Fin. Corp.*, 2012 WL 5900973, at *3 (C.D. Cal. Nov. 21, 2012) (explaining that a plaintiff is "considered to have discovered a fact when a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.") (ellipsis and quotation marks omitted). Certainly, by the time of I&O's May 2022 Dispute Notice--again, long before February 2023—it was abundantly clear that I&O was aware of Defendants' alleged untrue statements, *i.e.*, their inability and/or unwillingness to complete the Post-Closing Improvements.

*See* Dkt. No. 59-2 at 1.   Therefore, Count II is untimely under Section 77m's

one-year statute of limitations.[8]

## II.   **Statute of Repose**

In addition to the statute of limitations, Section 77m also provides that "[i]n

no event shall any such action be brought to enforce a liability created under section

… 77*l*(a)(1) of this title more than three years after the security was bona fide

offered to the public, or under section 77*l*(a)(2) of this title more than three years

after the sale."   The U.S. Supreme Court has described this as a statute of repose.

*Cal. Pub. Emp's. Ret. Sys. v. ANZ Sec., Inc. (CalPERS)*, 582 U.S. 497, 505-506

(2017).[9]

Defendants argue that Count I is barred by the statute of repose because this

case was brought more than three years after the alleged securities were "first

offered" to the public, which Defendants assert occurred "at least as early as the date

---

[8]I&O contends otherwise, relying upon an alleged "lack of meaningful progress" and the Defendants "ceas[ing] all communications" in Spring 2023.   Dkt. No. 26 at ¶¶ 60, 102.   Other than falling within the one-year period prior to filing this action, however, I&O alleges no facts suggesting why these matters created clarity where it did not previously exist.   Notably, according to the FAC, there had been a "lack of meaningful progress" since January 2019—there is nothing suggesting why its continuation to Spring 2023 is anything other than an obvious gimmick to preserve otherwise untimely claims.   I&O also provides no explanation as to why the "ceas[ing]" of communications, as opposed to Defendants' lack of progress and alleged unsatisfactory responses, would cause I&O to suddenly know of Defendants' alleged deceptions.   The Court, thus, finds these matters unhelpful to the inquiry.

[9]The statutory language of Section 77m reflects that the one-year statute of limitations and the three-year statute of repose must both be satisfied for a claim to proceed.   In other words, the failure of either is fatal.   *See In re Nat'l Mortg. Equity Corp.*, 636 F. Supp. at 1166 ("the one-year and three-year periods are cumulative, not alternative, *i.e.*, plaintiff must demonstrate compliance with both periods.").   For a more complete record on the issue of timeliness, the Court thus addresses both statutory periods.

[I&O] entered into the contracts for [Units 2406 and 3202]."   Dkt. No. 52-1 at 8.

I&O counters on two scores: (1) there has been *no* bona fide offering of the

Agreements because they are "unregistered" and (2) even if such an offering had

occurred, Defendants "continue to offer [the] securities for sale[]", which, according

to I&O, means the statute of repose "has not run…."   Dkt. No. 58 at 13-17.

The Court disagrees with I&O on each account.   First, although I&O cites

two cases helpful to its position concerning whether an unregistered security can be

considered a "bona fide" offer to the public,[10]  both of the same predate the Supreme

Court's 2017 decision in *CalPERS*.   In that decision, the Supreme Court explained

Section 77m's three-year statutory bar "admits of no exception and on its face

creates a fixed bar against future liability."   *CalPERS*, 582 U.S. at 505.   As the

Supreme Court further explained, that much is evident from the statutory language,

which clearly provides that "[i]n no event" shall an action be brought, with no

exceptions.   *Id*.   Although the Supreme Court was not faced with the issue of

unregistered securities, *no exceptions* is clear: *no exceptions*, including no exception

for unregistered securities.   The Court, therefore, rejects I&O's contrary

contention.   *See* Dkt. No. 58 at 15 n.5 (acknowledging that, under its logic,

"unregistered securities would never be subject to the statute of repose….").   The

Supreme Court further addressed the policy concerns I&O raises in its response, *see*

---

[10]Specifically, *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032 (D. Minn. 2003), and
*Bradford v. Moench*, 809 F. Supp. 1473 (D. Utah 1992).   Dkt. No. 58 at 14.

Dkt. No. 58 at 14-15, explaining that "statutes of repose are enacted to give more explicit and certain protection to defendants." *CalPERS*, 582 U.S. at 505. As a result, simply because the Agreements were not allegedly registered does not mean that they were not a bona fide offer to the public.

Second, in addition to *whether*, the parties also disagree *when*, the Agreements were bona fide offered to the public. Defendants argue it is when they were *first* offered, while I&O believes it is when they were *last* offered. Based upon the allegations of the FAC, it is unnecessary to resolve this dispute because, even if the three-year period is measured from the *last* moment, Count I is untimely. The reason is relatively straightforward. I&O alleges in the FAC, and repeatedly argues in its response, that the relevant securities here are *the Agreements*. While the FAC is dearth on factual allegations concerning when the Agreements were *first* offered to I&O, at the very latest, they had to have been offered to I&O by the time they were "executed and delivered", which the FAC alleges *last* occurred in July 2019 with respect to Unit 3202—a date more than *four years* before the start of this action. *See* Dkt. No. 26 at ¶¶ 29, 32; *Taddeo v. Am. Invsco Corp.*, 2012 WL 1947897, at *1-2 (D. Nev. May 30, 2012) (finding the sale of condominium units took place more than three years prior to being offered to the public and, thus, "failure to register claims" under 15 U.S.C. Section 77e were barred by the statute of repose). I&O attempts to avoid this result by contending, without any legal

support, that it has alleged additional "conduct that can be construed as an offer of a security." Dkt. No. 58 at 17. That, however, is the entire extent of I&O's argument in this regard. In other words, no explanation is provided of how any of the alleged conduct, which is not even mentioned in the response, could be considered a security or the offer of the same. That alone would be enough to reject this conclusory argument. There is also good reason why I&O likely makes no attempt to explain itself: it cannot. Specifically, the alleged conduct, much of which (even if a security) would itself be untimely, consists of various real estate documents, such as covenants, conditions and restrictions (*i.e.*, CC&Rs) and declarations of "Condominium Property Regime", concerning the "TK Resort Condominium Project". Put simply, the Court can see no reason why any of the same could be considered the *offer* of a *security*. Therefore, the Court finds Count I also barred by Section 77m's three-year statute of repose.

As for Count II, the parties' arguments are repetitive of ones they have already raised. Specifically, Defendants argue that Count II is barred by the statute of repose because the "sale" for purposes of Section 77m occurred when I&O purchased Unit 2406 and Unit 3202 in 2019. Dkt. No. 52-1 at 11; Dkt. No. 59 at 12. I&O argues, in contrast, that the Agreements "are the security" and the "sale" is not complete until the last contractual act is performed. Dkt. No. 58 at 18. Because the parties do not, the Court will not belabor this issue. Section 77m clearly

19

provides that, for claims under Section 77*l*(a)(2), the repose period runs from the "sale" of the security.   For the reasons discussed above, the Agreements were sold either when they were "executed and delivered" or, at the latest, when escrow closed, all of which occurred in 2019—more than three years before the start of this 2024 action.   Therefore, Count II is also barred by Section 77m's three-year statute of repose.

## III.   <u>Leave to Amend</u>

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires."   Fed.R.Civ.P. 15(a)(2).   Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency.   *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

The Court finds that leave to amend Counts I-II would be futile.   First, the FAC is not I&O's first shot at pleading allegations directed toward the timeliness of Counts I-II.   Rather, the FAC represented, in part, a clear effort to address related deficiencies in the Complaint.   *See* Dkt. No. 25-1 at ¶¶ 60, 87-93, 101-103 (a redline of the FAC adding numerous paragraphs related to the alleged timeliness of Counts I-II).   Second, in its response to Defendants' arguments with respect to

Section 77m, I&O repeated and relied upon the allegations of the FAC, not on facts that it wished to add.   Third, despite expressly requesting leave to amend in its response, Dkt. No. 58 at 22, I&O provides neither a reason for doing so nor an explanation for why it would be anything but futile.   In other words, I&O has not presented any version of the facts, other than the ones alleged in the FAC, that may suggest a different path toward the timeliness of Counts I-II.   Finally, fundamentally, the disputes between the parties in this regard are legal ones directed toward the application and interpretation of Section 77m.   The Court has ruled in favor of Defendants on the pertinent legal issues and leave to amend will not change that result.   Therefore, leave to amend Counts I-II is denied and dismissal of those claims is with prejudice.

## IV.   <u>Supplemental Jurisdiction</u>

This leaves I&O's State law claims.   Pursuant to statute, a district court may decline to exercise supplemental jurisdiction over a claim when, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction…." 28 U.S.C. § 1367(c)(3).   "The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion."   *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007).   Factors to be considered when making such a decision

include judicial economy, convenience, fairness, and comity.   *City of Chicago v.*

*Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

Here, the record presents no reason for this Court to exercise supplemental

jurisdiction over classic State law claims, such as breach of contract and

misrepresentation, following dismissal of the federal securities claims.   First,

despite being more than 18 months old, this case is still in its procedural infancy with

a Rule 16 scheduling order still not having been entered.   *See* Dkt. No. 57.

Second, it is a convenience and fairness wash whether Counts III-V are tried in

federal or state court in Hawai'i.   *See* Dkt. No. 26 at ¶ 22 (alleging that the

Agreements require "unresolved disputes" to be brought in federal or state courts in

Hawai'i).   Third, breach of contract and tortious conduct, such as alleged

misrepresentation, are examples of the bread-and-butter for State courts.

Moreover, the Agreements provide that Hawai'i law governs the same.   *See* Dkt.

No. 59-3 at 23 (¶ 13); Dkt. No. 59-4 at 23 (¶ 13).   Finally, to the extent relevant,

neither party requests retaining supplemental jurisdiction over the State law claims.

*See* Dkt. No. 52-1 at 18; Dkt. No. 58 at 22.   Therefore, Counts III-V are

DISMISSED WITHOUT PREJUDICE for lack of supplemental jurisdiction.   *See*

*Foster*, 504 F.3d at 1052 (affirming the dismissal of State law claims without

prejudice after the district court declined to exercise supplemental jurisdiction).[11]

## **CONCLUSION**

For the reasons set forth herein, the motion to dismiss, Dkt. No. 52, is

GRANTED to the extent that Counts I-II are DISMISSED WITH PREJUDICE and

Counts III-V are DISMISSED WITHOUT PREJUDICE for lack of supplemental

jurisdiction.   Dismissal of all the above claims is without leave to amend.   After

the entry of Judgment, the Clerk is instructed to CLOSE this case.

IT IS SO ORDERED.

Dated: November 17, 2025 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

---

[11]Because Counts III-V have been dismissed for lack of supplemental jurisdiction, it is
unnecessary to, and the Court does not, address Defendants' other arguments for dismissal of the
same.   *See* Dkt. No. 52-1 at 19-25.